PEOPLE v DALEO

1. CRIMINAL LAW—EVIDENCE—REBUTTAL EVIDENCE.

Testimony given after the prosecution and defense have rested which clearly contradicts and tends directly to impeach a defendant's testimony is rebuttal evidence.

2. CRIMINAL LAW—EVIDENCE—REBUTTAL EVIDENCE—ADMISSIBILITY—DISCRETION.

The admissibility of rebuttal evidence which could have been offered by the prosecution during its case in chief rests within the sound discretion of the trial court.

3. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY.

Inadmissibility of an evidential fact for one purpose in a criminal case does not prevent its admissibility for another purpose otherwise proper.

4. CRIMINAL LAW—EVIDENCE—REBUTTAL EVIDENCE—ADMISSIBILITY—DISCRETION.

Admitting a rebuttal witness's testimony which tended to show the commission of another crime for the purpose of directly rebutting a defendant's testimony was not an abuse of discretion where the trial court cautioned the jury on the limited use of the rebuttal testimony in their deliberations.

5. TRIAL—INSTRUCTIONS TO JURY—OBJECTIONS—WAIVER—COURT RULES.

Objections to the trial court's instructions to the jury must be raised at the time the instructions are given or, absent manifest prejudice, they are waived (GCR 1963, 516.2).

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—PREJUDICE.

An instruction to the jury that an armed robbery had been committed and that the only question for their deliberation was

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 29 Am Jur 2d, Evidence §§ 250, 269.

[3] 29 Am Jur 2d, Evidence §§ 1, 249, 251 *et seq.*

[5] 53 Am Jur, Trial § 827.

[6] 53 Am Jur, Trial §§ 646, 647.

whether the defendant had aided and abetted in its commission was not so manifestly prejudicial as to require reversal where defense counsel had admitted during closing argument that the armed robbery had been perpetrated.

Appeal from Macomb, Howard R. Carroll, J. Submitted Division 2 June 21, 1972, at Lansing. (Docket No. 12310.) Decided October 25, 1972.

Sam Salvatore Daleo was convicted of armed robbery. Defendant appeals. Affirmed. Leave to appeal denied, 389 Mich 760.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Don L. Milbourn,* Assistant Prosecuting Attorney, for the people.

*Towner, Rosin & York,* for defendant.

Before: HOLBROOK, P. J., and R. B. BURNS and T. M. BURNS, JJ.

T. M. BURNS, J. On January 18, 1971, the defendant was convicted by a jury of armed robbery pursuant to MCLA 750.529; MSA 28.797. He was sentenced to a term of from one to five years imprisonment and appeals as of right.

Three gunmen on the afternoon of June 2, 1970, held up and robbed a grocery store in Fraser, Michigan. Louis Clark, Robert Kyle, and Lenny Springer were arrested and charged with the robbery. The trio admitted participating in the robbery and tendered guilty pleas to a reduced charge of larceny from a person. In addition, Lenny Springer also told the authorities that the defendant, Salvatore Daleo, had planned the robbery and had assisted in its execution by driving one of the

"getaway" cars. Springer's revelation led to defendant's arrest on June 22, 1970.

At defendant's trial, the prosecution placed the self-confessed participants in the robbery (Messrs. Clark, Kyle, and Springer) on the stand. Their testimony indicated that on June 1, 1970, the day before the robbery, they met with the defendant at Kyle's residence in Detroit to plan the crime. They testified further that on the day of the robbery, June 2, 1970, the defendant drove past the grocery store, pointed it out to them as the place to be robbed, then waited in a car a short distance away until the robbery was consummated.

There is some indication that the robbery under consideration was not executed in a very professional fashion. Although, as previously indicated, there were two cars to be used in the getaway, when Kyle and Springer came out of the store to make their escape, both cars were gone and the two participants ran across a field near the market until they were captured by the police.

After the prosecution rested, the defendant took the stand in his own defense. On direct examination he stated that the only place he had ever met Clark, Kyle, and Springer was at a truck yard he managed when they had come there seeking employment. The defendant also testified that the three men returned to the truck yard three or four times and that the last time he saw them, they became argumentative and angry because no jobs were available at that time. Furthermore, the defendant explained that he had never been to the Kyle residence in Detroit.

Thereafter, the trial court permitted the prosecution to recall Kyle and Springer for the purpose of rebutting the defendant's testimony. Both witnesses testified that they had never sought employ-

ment at the defendant's truck yard, and that prior to the armed robbery in the instant case they had met the defendant at Kyle's home in Detroit to plan and execute the armed robbery of a gasoline station.

Immediately following this rebuttal testimony and again after the closing arguments, the trial court instructed the jury that: (1) the testimony of Kyle and Springer was not to be used as evidence of the defendant's guilt and (2) the testimony was only to be used to rebut the defendant's testimony regarding the manner in which he became acquainted with the witnesses.

The defendant raises three issues on appeal which we will discuss and decide in the manner presented below.

1. *Did the trial court commit reversible error by allowing Kyle's and Springer's testimony concerning previous armed robberies allegedly planned by the defendant into evidence after the prosecution had rested?*

For a proper resolution of this issue, we must determine at the outset whether or not the testimony given by Kyle and Springer after the defense had rested was in fact rebuttal testimony.

In *People v Utter,* 217 Mich 74, 83 (1921), and in *People v DeLano,* 318 Mich 557, 570 (1947), our Supreme Court defined rebuttal evidence as follows:

"Rebuttal evidence is broadly defined as that given by one party to contradict, repeal, explain, or disprove evidence produced by the other party and tending directly to weaken or impeach the same."

In the instant case, the defendant testified that the only times he had contact with Clark, Kyle, or Springer was on three or four occasions when they

came to the truck yard seeking employment. He also testified that he had never been to Kyle's residence in Detroit. Thereafter Kyle and Springer were recalled and explained that they had never sought employment at the truck yard and that in May, 1970, they met with the defendant at Kyle's Detroit residence for the purpose of mapping out and executing an armed robbery of a gasoline station. This latter testimony clearly contradicted and tended to directly impeach the defendant's testimony. Therefore, under the definition announced in *Utter* and *DeLano, supra,* we conclude that the testimony of Kyle and Springer, given after the prosecution and defense had rested, was rebuttal testimony.

The defendant argues, however, that the rebuttal testimony of Kyle and Springer was not properly admissible after the defense had rested since it should have been offered by the prosecution during its case in chief as evidence of a plan or scheme between the defendant and the two witnesses to commit armed robberies similar to the one in question. We cannot agree.

As a general rule, the admissibility of rebuttal testimony, which could have been offered by the prosecution during its case in chief, rests within the sound discretion of the trial court; and we will not disturb the trial court's decision unless a clear abuse of that discretion has been shown. *People v Utter, supra; People v DeLano, supra; People v Finnister,* 33 Mich App 283 (1971); *People v Hallaway,* 25 Mich App 604 (1970); *People v Joseph Barbara, Jr,* 23 Mich App 540 (1970). Therefore the question now becomes whether or not the trial court abused its discretion.

Here the fact that the rebuttal witness's testimony tended to show the commission of another

crime *(i.e.,* the armed robbery of a gasoline station) is not reason in and of itself to exclude the testimony since the inadmissibility of an evidential fact for one purpose does not prevent its admissibility for another purpose otherwise proper. See 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 412, "Facts in Issue", p 496; also, *People v Doyle,* 21 Mich 221 (1870).

In the case at bar, the rebuttal testimony showing that the defendant allegedly committed other similar crimes was not introduced for the improper purpose of showing that the defendant committed the crime charged herein. Rather, such testimony was introduced for the purpose of directly rebutting the defendant's testimony relating to the innocence of previous meetings with the other self-confessed participants in the crime. Moreover, the trial court cautioned the jury on the limited use of such rebuttal testimony in their deliberations.

In light of the foregoing, we hold that the trial court did not abuse its discretion by admitting the rebuttal testimony of Kyle and Springer.

2. *Where the defendant conceded the fact that an armed robbery had been perpetrated, was it reversible error for the trial court to instruct the jury that the robbery was undisputed and the only issue for their determination was whether or not the defendant aided and abetted in its commission?*

It is the defendant's position that the trial court committed reversible error by instructing the jury that an armed robbery had been committed and the only question for them to decide was whether or not the defendant had aided and abetted in its commission. Defendant's argument is untenable.

At trial, defense counsel voiced no objection to the portion of the instructions here in question.

It is well settled in our jurisdiction that any objections to the trial court's instruction must be raised at the time the instructions are given or else, absent manifest prejudice, they are waived. GCR 1963, 516.2; *People v Spaulding,* 42 Mich App 492; *People v Tubbs,* 22 Mich App 549 (1970); *People v Cassiday,* 4 Mich App 215 (1966).

Therefore, inasmuch as defendant's counsel failed to raise an objection, we turn to the question of whether the defendant was prejudiced by the trial court's instruction.

In *People v Griffen,* 36 Mich App 368, 371 (1971), which involved a prosecution for second-degree murder, the trial court instructed the jury as follows:

" 'I may say that I don't believe this jury is going to have much difficulty in arriving at the conclusion that a felonious homicide was committed, and that the homicide was second-degree murder.' "

We held that:

"The comment was improper, and if the fact that a homicide had been committed had been disputed, it would require reversal, *People v Wichman,* 15 Mich App 110 (1968). However, the fact that a homicide had been committed was not disputed at trial. The contest was over who did it and defendant's defense was that he did not do it. If the comment was error, it was not reversible error."

Defense counsel in the case at bar admitted during his closing argument that there was in fact an armed robbery of the grocery store on the date in question. The fact that a robbery had been committed, therefore, was not in dispute. The only

question was over whether or not the defendant assisted in planning and executing the crime.

For the reasons delineated above, we hold that since defense counsel admitted during closing argument that the armed robbery had been perpetrated, the defendant was not prejudiced by the trial court's similar statement in the instructions.

3. *Did the trial court's charge to the jury on aiding and abetting prejudice the defendant?*

Finally, the defendant urges that the trial court's charge to the jury on aiding and abetting was confusing and, therefore, prejudicial. The frivolity of this claim merits only a brief comment.

The transcript in the instant case reveals that the trial court, on two separate occasions, explained to the jury in very simple terms the law of aiding and abetting.

Furthermore, after reading these instructions as a whole, we are not persuaded that defendant was prejudiced thereby.

Affirmed.

All concurred.