## PEOPLE v BEASLEY

1. CRIMINAL LAW—IDENTIFICATION—PHOTOGRAPHS—LINEUP—RIGHT
   TO COUNSEL.

   Photographs of a suspect known to be in custody or who can
   readily be produced for a lineup, except in exigent circum-
   stances, may not be displayed to witnesses and a lineup cannot
   be conducted in the absence of counsel.

2. CRIMINAL LAW—IDENTIFICATION—PHOTOGRAPHS—LINEUP—CASE
   PRECEDENT—RETROACTIVE APPLICATION.

   Language in the Michigan Supreme Court case setting forth the
   rules for photographic lineups, which states that it "appears"
   that at least as to appeals from Wayne County, the decision
   "ought to be" retroactive is suggestive rather than directory.

3. CRIMINAL LAW—JURY—REMOVAL OF JUROR—DISCRETION—STAT-
   UTES.

   A trial judge properly used his discretion when he excused a
   juror after the juror disclosed during the trial that he was
   acquainted with one of the witnesses, where the full basis of
   the juror's relationship to the witness was disclosed to both
   parties, where the judge made clear his reason for excusing the
   juror, and where after excluding the juror in question, 12
   jurors remained as triers of fact (MCLA 768.18).

4. CRIMINAL LAW—TRIAL—JUDGE'S REMARKS—PREJUDICE—ACCURATE
   STATEMENT OF LAW.

   A remark by a trial judge in an uttering and publishing case that
   there was no law requiring a bank to immediately report the
   crimes alleged to have been committed by the defendant did
   not prejudice the defendant and was not error, although the
   remark, a response to a statement made by defense counsel
   while objecting to the prosecution's direct examination of the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 309 *et seq.,* 368, 369.
[3] 47 Am Jur 2d, Jury § 285.
[4] 75 Am Jur 2d, Trial § 91 *et seq.*
[5] 75 Am Jur 2d, Trial § 61 *et seq.*
[6, 7] 58 Am Jur, Witnesses § 111.

bank's security officer, was made in the jury's presence; it was an accurate statement of the law.

5. CRIMINAL LAW—WITNESSES—EXPERT WITNESSES—EXCLUSION FROM COURTROOM—CROSS-EXAMINATION—SEQUESTRATION OF WITNESSES—PREJUDICE.

A judge's exclusion, over objection, of a defendant's handwriting expert from the courtroom was not an abuse of discretion, although defendant wanted his expert, after hearing the prosecution's rebuttal handwriting expert, to assist in cross-examination, where defendant had excused his expert witness, where defendant had himself requested that all witnesses be sequestered, and where the exclusion did not prejudice defendant because the rebuttal witness's testimony was not damaging.

6. CRIMINAL LAW—WITNESSES—REBUTTAL WITNESSES—INDORSEMENT—DISCRETION.

The decision to allow rebuttal testimony and to indorse witnesses is within the discretion of the trial judge.

7. CRIMINAL LAW—WITNESSES—INDORSEMENT—REBUTTAL WITNESSES—EVIDENCE—DISCRETION.

A trial judge did not abuse his discretion in allowing two unindorsed prosecution witnesses to testify in rebuttal where the witnesses were called only to rebut evidence introduced by the defendant, not to introduce new evidence which belonged in the prosecution's case in chief.

Appeal from Wayne, Joseph G. Rashid, J. Submitted Division 1 June 4, 1974, at Detroit. (Docket No. 16721.) Decided September 24, 1974. Leave to appeal applied for.

Juanita Beasley was convicted of uttering and publishing forged instruments. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*Philip A. Gillis,* for defendant on appeal.

Before: Bronson, P. J., and Quinn and Van Valkenburg,* JJ.

Bronson, P. J. Defendant was convicted after jury trial on two counts of uttering and publishing a forged instrument in violation of MCLA 750.249; MSA 28.446. She was sentenced on March 20, 1973 to serve from 2 years and 8 months to 14 years in state prison. She appeals as of right. We affirm.

Defendant's most substantial claim is that testimony regarding a preindictment photographic showup was improperly introduced at her trial. Two prosecution witnesses testified that they were shown a series of photographs by Allen Park police officers on October 13 and 17, 1972, respectively. Both said they picked out defendant's picture from the array. Defendant was not arraigned until November 14, 1972. However, she had been arrested on September 21, 1972, in Royal Oak on a different charge and at the time of the photographic showup was free on bond. The Allen Park police knew that defendant was scheduled to be arraigned in Oakland County on October 26, 1972, but held the showups without counsel for defendant being present.

The controlling rules in Michigan are that 1) except in exigent circumstances, photographs of a suspect "known to be in custody or who can readily be produced for a lineup" may not be displayed to witnesses and 2) a lineup cannot be conducted in the absence of counsel. *People v Jackson,* 391 Mich 323, 338–339; 217 NW2d 22 (1974); *People v Franklin Anderson,* 389 Mich 155; 205 NW2d 461 (1973).

Defendant here was not represented by counsel at the photographic showup. She could readily

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

have been produced for a lineup.[1] The police had her address, knew she was out on bond, and had been apprised of her arraignment date. In this pre-*Anderson* case the rules announced in *Anderson* were violated, both because a photographic showup was conducted whose subject was a suspect readily available for a corporeal lineup and because counsel was not present.[2] Because defendant's trial was held prior to the *Anderson* decision, a retroactivity problem is presented.

This problem was recognized by the *Jackson* Court where the Supreme Court said:

"It, therefore, *appears* that at least as to appeals from Wayne County, *Anderson ought to be* retroactive to at least June 11, 1969, the date on which the *Adams* case was submitted." *Jackson, supra,* at 340. (Emphasis supplied.)

Defendant Beasley was tried in Recorder's Court of Detroit beginning on January 29, 1973. *Jackson* would thus apparently require us to apply *Anderson* retroactively and order reversal of defendant's conviction.

We fail to find such an anomalous result in the language quoted above. The Court used the words "appears" and "ought to be". The language is suggestive rather than directory. We think the Supreme Court anticipated the serious due process

---

[1] *See People v Cotton,* 38 Mich App 763; 197 NW2d 90 (1972), cited in *Jackson, supra,* at 338, n 13, as an example of a case where defendant could readily be produced for a lineup. There defendant was released and his car was impounded. A photographic showup was held without counsel present. *Compare People v Lee,* 391 Mich 618; 218 NW2d 655 (1974).

The fact that defendant had been arrested on a different charge is irrelevant. *People v James Anderson,* 391 Mich 419; 216 NW2d 780 (1974).

[2] *See Jackson, supra,* n 16 at 339.

and equal protection problems inherent in the use of different rules for different counties.[3]

The *Jackson* Court relies on *People v Adams,* 19 Mich App 131; 172 NW2d 547 (1969), in support of limited retroactivity. Citing a prosecutor's concession that "where the defendant is in custody, identification by means of a police lineup should be attempted", *Adams, supra,* at 133, fn 1, and that "the pretrial photographic identification stage is as critical as the lineup stage"—thus requiring presence of counsel—the Supreme Court concludes that the Wayne County prosecutor's office should be held to a higher standard. However, the concession made by the prosecutor in *Adams* was gratuitous, since *Adams* involved a photo identification under "exigent circumstances"[4] such that presence of counsel was *not* required. The concession made in *Adams* was unnecessary to the decision in that case and we cannot believe the Supreme Court intended to rely on it as the sole justification for such a unique retroactivity rule.

We pause briefly over defendant's other assignments of error. Defendant argues that the photographic showup procedures were impermissibly suggestive. The record of the pretrial hearing held on that question adequately supports the trial judge's finding that the procedures used satisfied due process standards.

Defendant complains that the trial judge erred in excusing a juror who disclosed during trial that he was acquainted with one of the witnesses. The full basis of the juror's relationship to the witness was disclosed to both parties. The judge made clear his reason for excusing the juror. After ex-

---

[3] *Jackson, supra,* at 357 (dissenting opinion).

[4] Photos were shown to the victims, seriously wounded and hospitalized, immediately after the defendant's arrest.

cluding the juror in question, 12 remained as triers of fact. Under these circumstances, the decision to excuse the juror, which by statute[5] is left to the discretion of the trial judge, was not error.

Defendant also asserts that a remark by the trial judge that there was no law requiring the bank to immediately report the crimes alleged to have been committed by defendant requires reversal. Although the remark—a response to a statement made by defense counsel while objecting to the prosecution's direct examination of the bank's security officer—was made in the jury's presence, it was an accurate statement of the law. *People v Lefkovitz,* 294 Mich 263, 270; 293 NW 642 (1940). It did not prejudice defendant and was not error.

The exclusion, over objection, of the defendant's handwriting expert from the courtroom is assigned as error. She wanted her expert, after hearing the prosecution's rebuttal handwriting expert, to assist in cross-examination. Defendant had excused her expert witness. And she had herself requested that all witnesses be sequestered. The exclusion did not prejudice her because the rebuttal witness's testimony was not damaging.[6] Exclusion of the witness, under these circumstances, was not an abuse of discretion. See *People v Erb,* 48 Mich App 622; 211 NW2d 51 (1973).

Defendant maintains that the trial judge improperly allowed two unendorsed prosecution witnesses to testify in rebuttal. The prosecutor used a handwriting expert to challenge the testimony of the defendant's expert and called a Royal Oak police officer to testify about the Royal Oak arrest which defendant introduced in her direct examina-

---

[5] MCLA 768.18; MSA 28.1041.

[6] The people's expert testified that it was impossible to tell whether defendant wrote the disputed documents.

tion.[7] The trial judge concluded that these witnesses were called only to rebut evidence introduced by defendant, not to introduce new evidence which belonged in the prosecution's case in chief. The decision to allow rebuttal testimony is for the trial judge. *People v Moore,* 51 Mich App 48, 58; 214 NW2d 548 (1974); *People v Daleo,* 43 Mich App 386; 204 NW2d 315 (1972). Endorsement of witnesses is also within the discretion of the trial judge. *People v Bennett,* 46 Mich App 598, 616; 208 NW2d 624 (1973). Close scrutiny of the record reveals that the trial judge did not abuse his discretion in allowing rebuttal here.

We have given careful consideration to defendant's other assignments of error. None require or justify reversal and all are of insufficient precedential significance to warrant extended discussion here.

Affirmed.

All concurred.

---

[7] *See, e.g.; People v Curry,* 49 Mich App 64, 67; 211 NW2d 254 (1973).